**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Duane Romney, | No. CV-23-01936-PHX-ROS |
|     Plaintiff, | **ORDER** |
| v. | |
| Progressive Preferred Insurance Company, et al., | |
|     Defendants. | |

Plaintiff Duane Romney ("Plaintiff") filed suit against Defendant Progressive Preferred Insurance Company ("Defendant") to recover denied uninsured motorist benefits following his October 7, 2020 motorcycle accident. Defendant moves for summary judgment as to Plaintiff's claims of uninsured motorist benefits, breach of contract, and declaratory relief. (Doc. 40, "Mot."). For the reasons set forth below, Defendant's motion will be denied.

**FACTUAL BACKGROUND**

Defendant and Plaintiff filed separate statements of fact in support of their positions. (Doc. 41, "DSOF"; Doc. 48, "PSOF"). Plaintiff objected to several of Defendant's statements of fact. (Doc. 47). The Court has reviewed the objections and only considered admissible relevant evidence.

It is undisputed that Plaintiff, based on his personal knowledge, would testify to what follows. On October 7, 2020, Plaintiff left his job at the Brass Tap at approximately

9:08 p.m. on his 2020 Harley Davidson motorcycle to run an errand. (PSOF ¶ 4; Doc. 48-1). While on his errand, Plaintiff withdrew money from BOK Financial Bank in the same Mesa Riverview Complex as the Brass Tap. (PSOF ¶ 7; Doc.48-2 at 57-58, 61). Plaintiff left BOK Financial via the private drive in front of Chick-fil-A and entered the right lane of northbound Dobson Road, intending to turn right at the next intersection onto Bass Pro Drive to return to the Brass Tap. (PSOF ¶¶ 4-7; Doc. 48-2 at 62-66).



Duane's Intended Route from BOK Financial ATM back to Brass Tap

(PSOF ¶ 5).



(PSOF ¶ 6; Doc. 54-Exhibit D).

As Plaintiff continued northbound on Dobson Road in the right lane, a black sedan entered Dobson Road from the private drive for Taco Bell, cutting him off. (PSOF ¶ 8; Doc. 48-2 at 69-72). To avoid crashing into the sedan, Plaintiff attempted to veer into the middle lane, but the sedan continued cutting across the middle lane. (PSOF ¶ 9; Doc. 48-2 at 72-77). Plaintiff went down on his motorcycle, and the momentum caused him to land in the leftmost northbound lane on Dobson Road. (PSOF ¶ 10; Doc. 48-2 at 78-80). The motorist left the scene, and Plaintiff did not return to the Brass Tap. (PSOF ¶ 11-12; Doc. 48-1; Doc. 48-2 at 89-90).

On the day of the accident, Plaintiff was insured with a primary policy under GEICO Indemnity Company Policy No. 4154264487 and a secondary or excess policy with Defendant under Progressive Preferred Insurance Company Auto Policy, Policy No. 937242347 (the "Policy"). (PSOF ¶ 42-43). On February 22, 2021, Plaintiff submitted a demand to GEICO, which was subsequently tendered to him on March 22, 2021. (PSOF ¶ 48; Doc. 48-15). On March 11, 2021, Plaintiff's counsel contacted Defendant to open a claim. (PSOF ¶ 48). On June 29, 2021, Defendant sent Plaintiff a letter stating Defendant would not provide benefits because Plaintiff did not offer "independent evidence of a phantom vehicle." (PSOF ¶ 67). Plaintiff claims he is entitled to coverage under the uninsured motorist statute and the Policy with Defendants.

Uninsured motorist coverage involving an unidentified motor vehicle requires corroboration evidence under both A.R.S. §20-259.01(M) and the Policy. A.R.S. §20-259.01(M) provides:

> If an insured makes a bodily injury or death claim under uninsured or underinsured motorist coverage based on an accident that involved an unidentified motor vehicle and no physical contact with the motor vehicle occurred, the insured shall provide corroboration that the unidentified motor vehicle caused the accident. For the purposes of this subsection, "corroboration" means any additional and confirming testimony, fact or evidence that strengthens and adds weight or credibility to the insured's representation of the accident.

The corroboration requirement of Plaintiff's Policy with Defendant reads:

> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury
> …
> 3. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
> …
> d. Whose owner or operator cannot be identified and which causes an accident resulting in bodily injury to an insured person, provided that:
> …
> (ii) independent corroborative evidence exists to prove that the bodily injury was caused by the unidentified operator of the motor vehicle. The testimony of an insured person seeking payment under this Part III shall not constitute independent corroborative evidence unless the testimony is supported by additional evidence.

(DSOF ¶ 2; PSOF ¶ 47; Doc. 40-1 at 26; Doc. 48-12 at 18).

Defendant claims Plaintiff is not entitled to policy benefits and moves for summary judgment (Doc. 40) on three of the four claims against them: Uninsured Motorist (UM) Benefits (Count One), Breach of Contract (Count Two), and Declaratory Judgment (Count Four). Defendant has not moved on Bad Faith (Count Three). Defendant's sole contention is that Plaintiff has not adequately corroborated his claim under A.R.S. §20-259.01(M) and the Policy.

## LEGAL STANDARD

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The non-moving party must then point to specific facts establishing there is a genuine issue of material fact for trial. *Id.*

At summary judgment, the Court considers only admissible evidence. See Fed. R. Civ. P. 56(c)(1)(B). When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue of material fact exists "if the [admissible] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. In ruling on the motion for summary judgment, the Court will construe the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991).

## ANALYSIS

Plaintiff offers evidence as corroboration that an unidentified motorist caused his accident. Defendant argues Plaintiff's alleged corroboration evidence is either inadmissible or solely based on Plaintiff's recollections of the accident which does not allow Plaintiff to recover under Arizona law and the Policy.

Plaintiff first claims David Mock and Ashley Graham witnessed an uninsured motorist cause the accident. (PSOF ¶ 15). Plaintiff offers audio of a 911 call from Ashley Graham (Doc. 54-Exhibit I) and Mesa Police Department's Computer Assisted Dispatch Report (Doc. 48-4; "CAD Report") which identifies Ashley Graham and David Mock as witnesses and contains abbreviated portions of the 911 call. (PSOF ¶ 14-25).[1] Plaintiff also claims David Mock told him, "we just witnessed it" and "something about having a seen a car cut in front of Mr. Romney or cut Mr. Romney off." (PSOF ¶ 26).[2]

Defendant contests whether David Mock and Ashely Graham actually witnessed an uninsured motorist cause Plaintiff's accident. Defendant argues the witnesses are not

---

[1] Defendant argues the recording is inadmissible because it is unauthenticated and there is a substantial difference of opinion regarding the contents. Under Federal Rule of Evidence 901(a), "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." However, under Federal Rule of Evidence 104(a), the court determines whether the proponent has offered sufficient proof such that a reasonable juror could find authenticity. Having listened to the recording, the Court finds it is unclear whether the recording has the necessary indicia of reliability. Plaintiff also offers the CAD Report, which might establish authentication, but Plaintiff failed to establish its admissibility. However, the Court need not determine the admissibility of the recording because Plaintiff has otherwise established the necessary corroboration.

[2] Plaintiff's testimony reciting David Mock's statement is hearsay and Plaintiff has not shown it admissible pursuant to any exception.

identified in the Police Report or the Accident Report, and Plaintiff's deposition indicates he does not recall what the witnesses said or saw. (DSOF ¶ 3; Doc 40-1 at 2-7; 52-53). Further, Defendant offered purported affidavits from both Mock and Graham claiming that while they saw a motorcyclist go down on October 7, they did not witness what happened to the motorcycle before it went down and did not observe any other vehicle around the motorcycle. (DSOF ¶ 4-5; Doc. 40-1 at 57-61).[3]

Plaintiff also offered a report from accident reconstruction expert Edward Tuttle in which he offered an opinion regarding the potential causes of Plaintiff's accident. (Doc. 48 ¶¶ 98-100; Doc. 49-5).[4] Defendant does not question Mr. Tuttle's qualifications under Federal Rule of Evidence 702 but argues his conclusions are "not based on any reliable principles or methods."

Under Rule 702 of the Federal Rules of Evidence, a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

---

[3] Plaintiff contends the affidavits are inadmissible hearsay as they are not notarized, lack a title, and were created by Defendant's counsel's paralegal. (Doc. 47 ¶¶ 5-6). Defendant responds the affidavits comply with Ariz. R. Civ. P. 80(c). Defendant is mistaken that the admissibility of affidavits are judged pursuant to the Arizona Civil Rules. The Federal Rules of Civil Procedure and in particular Rule 56, and the Federal Rules of Evidence govern admission and pursuant to the applicable Federal Rules Defendant has not established admissibility. They will not be considered.

[4] Plaintiff has offered other evidence to corroborate his claim including Crash and Incident Reports from investigating Officer Terrence Lockwood (PSOF ¶ 27-35; Doc. 48-4; Doc. 48-5), medical reports following the accident (Doc. 48-7; Doc. 48-8; Doc. 48-9; Doc. 48-10), evidence of handling of Plaintiff's primary uninsured motorist policy held by GEICO with regards to this same incident (PSOF ¶ 42-49; Doc. 48-11; Doc.48-14; Doc. 48-15; Doc. 48-16), and evidence of the handling of Plaintiff's claim by Defendant. (PSOF ¶ 50-70; Doc. 48-13; Doc. 48-16). Plaintiff has not established the admissibility or relevance of much of this evidence, so it will not be considered.

  (b) the testimony is based on sufficient facts or data;

  (c) the testimony is the product of reliable principles and methods, and

  (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Mr. Tuttle bases his opinion on a 37 year career in law enforcement, a 26 year career in collision investigation at the Traffic Bureau, and 28 years of riding motorcycles, including 16 years as a police motorcycle officer. (Doc. 49-5 ¶¶ 23-24, 47). The Court finds Mr. Tuttle's opinion is based on specialized knowledge sufficient to meet the requirements of Rule 702. As the Advisory Committee notes of Rule 702 state, "The fields of knowledge which may be drawn upon are not limited merely to the 'scientific' and 'technical' but extend to all 'specialized knowledge.'" Fed. R. Evid. 702 Advisory Committee's Note.

In summary, Mr. Tuttle's report concludes: (1) Plaintiff was traveling northbound in the curb lane of Dobson Road at approximately 25 miles per hour, intending to make a right turn at the upcoming intersection onto Bass Pro Drive; (2) an unknown vehicle entered Dobson Road from the Taco Bell driveway forcing Plaintiff to take evasive action by laying down his motorcycle in the roadway, and (3) the only legitimate and logical reason for Plaintiff to lay his motorcycle down in the roadway would be to avoid a collision. (Doc. 49-5 ¶ 51).

Mr. Tuttle's report considered several relevant facts in support of Plaintiff's testimony of what happened. He opines motorcycle riders (1) "rarely intentionally lay their motorcycles down without having a valid reason to do so," (2) "realize the potential for injury when they intentionally lay down their motorcycle," and (3) only do so to avoid a collision "as a last resort." (*Id.* at ¶¶ 45-46). Mr. Tuttle further notes in his experience he has "never intentionally laid [his] motorcycle down without having a valid reason to do so." (*Id.* at ¶ 5).

Mr. Tuttle also opines that motorcycles go to ground only under certain conditions, such as "debris in the roadway, high rate of speed of the motorcycle, failure to negotiate roadway curves properly, inadequate riding ability, experience, and training, or evasive movement to avoid roadway obstacles or other vehicles." (*Id.* at ¶ 47). None of those

factors were present here. Mr. Tuttle notes Plaintiff estimated his speed at 25 to 35 miles per hour, there were no dangerous curves in the roadway, and no evidence of raining or other roadway debris, all of which are undisputed. (*Id*. at ¶ 49). Mr. Tuttle states Plaintiff had significant riding experience since Plaintiff has ridden motorcycles since he was 16 years old and has attended advanced training through the Motorcycle Safety Foundation. (*Id.* at ¶ 48). Mr. Tuttle concludes "the one legitimate reason for [Plaintiff] to lay his motorcycle on its side and slide to an uncontrolled point of rest" is "because he was required to make a sudden evasive movement to avoid colliding with another vehicle." (*Id*.). Finally, Mr. Tuttle states "there is no evidence which contradicts the statements made by [Plaintiff] or otherwise gives rise to questioning the truth of his assertion that another vehicle cut in front of him." (*Id*. at ¶ 50).

However, Defendant argues Mr. Tuttle's report is "not based on independent corroborative evidence" beyond Plaintiff's words. Several cases have evaluated what constitutes "corroboration" under A.R.S. § 20-259.01(M). In *Scruggs v. State Farm Mut. Auto Ins. Co.*, P.3d 989 (Ariz. Ct. App. 2003), the court held "once the claimant has provided testimony, fact or evidence 'that strengthens and adds weight or credibility' to his representation of how the accident was caused by the 'miss and run' vehicle, the claimant has met the statutory requirement. He has done so even if he has not provided independent evidence that an unidentified motor vehicle actually existed." *Id*. at 994. In addition, "the word 'confirming' does not create an additional factual inquiry. Rather, it describes testimony, fact or evidence that 'gives new assurance of' the insured's representation of the accident." *Id.*

In *Scruggs*, the court considered whether two types of evidence met the corroboration requirement: a statement made by the claimant to an investigating officer and an affidavit and crash reconstruction report by an accident reconstruction specialist. *Id.* As to the claimant's statement, the *Scruggs* court found even though the statement made by the claimant could be admissible as an excited utterance, it still constituted the claimant's representation of the accident and was not "additional … to the insured's representation of the accident." *Id.* at 993; A.R.S. § 20-259.01(M). Regarding the expert

- 8 -

report, the *Scruggs* court found the crash reconstruction report was "additional" to the claimant's representation of the events of the accident because the report did not merely repeat the claimant's version of events but confirmed the claimant's allegation that the claimant had veered into the back of the tanker truck at an angle coming from the left. *Id.* at 994.

In *Vanleuven v. Country Mut. Ins. Co.*, 2008 U.S. Dist LEXIS 139615 (D. Ariz. 2008), the court found an expert report was insufficient to meet the corroboration requirement when the report (1) "did not disprove or 'confirm' [plaintiff's] version of the accident's circumstances," (2) confirmed there was "no physical evidence to establish the presence of a motorcycle or any other vehicle at the time the accident occurred," and (3) the traffic accident report "contain[ed] no mention of another vehicle involved in the incident." The expert report otherwise only "confirmed [plaintiff's] vehicle left the roadway at the angle allegedly described by [plaintiff]" and found "no evidence contradictory to statements made by [plaintiff]." *Id.* at 20. Thus, the expert opinion "did not strengthen and add weight or credibility to [plaintiff's] representation of the accident." *Id.*

In *Pittam v. Ohio Sec. Ins. Co.*, 2021 U.S. Dist. WL 2981584 (D. Ariz. 2021), the court granted plaintiff's motion for summary judgment seeking a declaration under A.R.S. § 20-259.01(M) that plaintiff sufficiently corroborated the phantom vehicle in the accident to be extended uninsured motorist's benefits under the policy. The plaintiff claimed a phantom vehicle cut him off, forcing him to perform an evasive maneuver and rear-end a semi-trailer while the car left the scene. *Id.* at 1. The court found plaintiff's submission of an expert report was sufficient to meet the corroboration requirement because the report considering the roadway evidence and tire marks "ma[de] [plaintiff's] version of events more likely than any of the other possible scenarios" and the expert "[could not] fathom at this point another scenario that would cause [the accident] to happen." *Id.* at 5-6. Moreover, the court found the expert opinion "did not merely repeat claimant's version of events," but rather confirmed plaintiff's description, and thus "to some degree strengthen[ed] [plaintiff's] version of the accident" *Id.* (quoting *Scruggs*, 62 P.3d at 994).

The Court finds Mr. Tuttle's opinions in his report are sufficient to corroborate Plaintiff's claim that an uninsured motorist caused his accident under A.R.S. § 20-259.01(M). As in *Scruggs*, Mr. Tuttle's report "was additional to [claimant's] representation of the accident and it bolsters his account." *Scruggs*, 62 P.3d at 994. Like the report considered in *Pittam*, Mr. Tuttle's report "ma[de] [Plaintiff's] version of events more likely than any of the other possible scenarios," the expert "[could not] fathom at this point another scenario that would cause [the accident] to happen," and "to some degree strengthen[ed] [Plaintiff's] version of the accident." *Pittam*, 2021 U.S. Dist. WL 2981584 at 5-6. Unlike the report deemed insufficient in *Vanleuven*, Mr. Tuttle's report did not only fail to find contradictory evidence to Plaintiff's statement, but rather strengthened and added credibility to Plaintiff's representation of the accident. *Vanleuven*, 2008 U.S. Dist. LEXIS 139615 at 20. Therefore, the motion for summary judgment will be denied as to Count One.

The Court also finds Mr. Tuttle's expert report is sufficient to find Plaintiff has provided "independent corroborative evidence" to prove his "bodily injury was caused by [an] unidentified operator of the motor vehicle" under the Policy. Therefore, the motion for summary judgment will be denied as to Count Two.

Defendant has raised no additional arguments regarding Plaintiff's claim for a Declaratory Judgment (Count Four). Therefore, the motion for summary judgment will be denied as to Count Four.

### A. Conclusion

Plaintiff has sufficiently corroborated his claim under A.R.S. § 20-259.01(M) and the Policy. Accordingly, genuine issues of material fact exist regarding Plaintiff's claims for Uninsured Motorist (UM) Benefits (Count One), Breach of Contract (Count Two), and Declaratory Judgment (Count Four). Therefore, Defendant's motion for summary judgment will be denied.

Accordingly,

**IT IS ORDERED** Defendant Progressive's motion for summary judgment (Doc. 40) is **DENIED.**

**IT IS FURTHER ORDERED** trial to a jury is set for **January 21, 2025 at 8:30 a.m**. Estimated length of trial is 4 days.

**IT IS FURTHER ORDERED** all Motions in Limine are due November 26, 2024. Responses are due ten days afterward. No replies are permitted unless ordered by the Court. Prior to filing any Motion in Limine, the parties must confer and discuss the contents of each planned motion. No Motion in Limine should be filed if the other party does not oppose the relief requested.

**IT IS FURTHER ORDERED** the Joint Proposed Pretrial Order, if not already filed, is due December 3, 2024.

**IT IS FURTHER ORDERED** the parties shall review the Court's standard Juror Questionnaire (available on the Court's website) and submit NO MORE THAN 5 PROPOSED QUESTIONS EACH to be added to the standard Juror Questionnaire with the Court's approval no later than December 3, 2024. Each proposed question shall stand alone and shall not contain sub-parts.

**IT IS FURTHER ORDERED** the parties shall submit a Joint Statement of the Case, of no more than a few short sentences for the Juror Questionnaire, no later than December 3, 2024. The Joint Proposed Pretrial Order shall include trial exhibit lists detailing objections, responses, and stipulations. Parties shall deliver all disputed exhibits to the Court no later than December 3, 2024.

**IT IS FURTHER ORDERED** the parties shall submit a second Joint Statement of the Case, of no more than two short paragraphs to be read to the jury, no later than December 17, 2024.

**IT IS FURTHER ORDERED** no later than December 17, 2024, the parties shall file and submit via email (silver_chambers@azd.uscourts.gov) in Word format proposed Jury Instructions in compliance with the procedures available on the Court's website, including but not limited to: 1) a *joint* set of proposed jury instructions where the parties' instructions agree; 2) a separate set of instructions (one for each party) where the parties do not agree; and 3) legal authority supporting all proposed instructions whether the parties agree or not. Where the parties do not agree, the opposing party shall clearly state its

objection to the proposed instruction and the proposing party shall clearly state its response.

**IT IS FURTHER ORDERED** the parties will jointly file a proposed form of verdict, or if the parties do not agree, they may separately file proposed forms of verdict no later than December 17, 2024.

**IT IS FURTHER ORDERED** no later than December 17, 2024, the parties shall deliver to chambers excerpts of the deposition testimony they propose to present at trial, in compliance with the procedures available on the Court's website (found in Deposition Designation Procedure for Judge Silver), including but not limited to: Plaintiffs highlighting in yellow the portions they wish to offer and Defendants highlighting in blue those portions they wish to offer. If either party objects to the proposed testimony, a specific and concise objection (e.g., "Relevance, Rule 402") shall be placed in the margin adjacent to the proposed testimony.

**IT IS FURTHER ORDERED** a final pretrial conference is set for **January 15, 2025 at 2:00 p.m.** at which time the Court will review Juror Questionnaires. The parties shall meet and confer prior to this date regarding the Juror Questionnaires and email to the Courtroom Deputy no later than noon on January 14, 2025 a list of any jurors they agree should be stricken for cause, along with any objections to jurors they do not agree should be stricken for cause. **The parties shall not file this list.** The Court will rule on any disputed jurors at the final pretrial conference.

**The parties will be supplied a disk containing the questionnaires approximately one week prior to the final pretrial conference. Counsel shall bring a copy of the questionnaires to the conference for review. Counsel are required to return the disk to the Courtroom Deputy and destroy all copies of the questionnaires no later than the last day of trial.**

…
…
…
…

**IT IS FURTHER ORDERED** the parties shall comply with the Exhibit Procedures found on the Court's website at www.azd.uscourts.gov / Judges' Information / Orders, Forms & Procedures for Hon. Roslyn O. Silver.

Dated this 1st day of November, 2024.

Honorable Roslyn O. Silver
Senior United States District Judge